THE STATE OF OHIO, APPELLEE, *v.*
NAGEL, APPELLANT.

(No. 2100 — Decided
February 5, 1986.)

*Peggy J. Schmitz,* assistant prosecuting attorney, for appellee.
*James L. Kimbler,* for appellant.

GEORGE, P.J. Defendant-appellant, Carl Nagel, appeals his conviction for driving under the influence of alcohol and driving with a prohibited blood-alcohol content pursuant to R.C. 4511.19 (A)(1) and (3). This court affirms.

Nagel was stopped on U.S. 250 by State Trooper S. C. Sherrod at about 10:45 p.m., March 24, 1985. The officer observed him traveling at about thirty-five to forty miles per hour in a fifty-five mile per hour zone and weaving both within his lane and across the center line. When the officer activated his overhead lights to pull him over, Nagel stopped in the center passing lane. Sherrod testified that he noticed the odor of alcohol on Nagel's breath and that Nagel passed over his license in his wallet three times before he was able to find it. The officer also observed that Nagel staggered as he walked back to the patrol car and that his eyes were bloodshot and watery.

He swayed and wobbled on a balance test and was unable to perform satisfactorily a number of other field tests administered by the trooper. In addition, the officer said Nagel's eyes jerked and twitched during a gaze nystagmus test, another indication that he had consumed alcohol.

The officer arrested him and took him to the post where he administered a breathalyzer test. The results indicated Nagel had .117 gram by weight of alcohol per two hundred ten liters of his breath. A jury found him guilty on both charges, but he was sentenced only on the driving while under the influence charge.

Assignment of Error I

"The trial court erred in admitting the officer's testimony as to the gaze nystagmus test because the officer was not qualified as an expert, and that there is no proven scientific basis for the gaze nystagmus test."

Nagel argues that the officer should not have been allowed to testify as to the gaze nystagmus test because he was not qualified as an expert and there was no evidence that such test has a proven scientific basis. The test Nagel objects to consists of checking the movement of an individual's eyes as they follow the path of a moving object, such as a pen, before the eyes. It is not comparable, as Nagel contends, to a polygraph test which requires the use of a machine, the scientific reliability of which may be questioned. The gaze nystagmus test, as do the other commonly used field sobriety tests, requires only the personal observation of the officer administering it. It is objective in nature and does not require expert interpretation. Objective manifestations of insobriety, personally observed by the officer, are always relevant where, as here, the defendant's physical condition is in issue.

Sherrod testified he had attended a one-day training session where he had observed eye reactions in individuals

both before and after consumption of alcohol. The eyes of those who have consumed alcohol, he said, jerk in their sockets and twitch or bounce at the corners as they follow the pen from side to side. He testified that he had given the test to between forty and fifty persons and had decided not to arrest some of these partly on the basis of this test.

It should be remembered that the gaze nystagmus test was one of a number of field sobriety tests administered by the officer to assist him in assessing Nagel's physical condition. Taken together, they were strongly suggestive of intoxication. It does not require an expert to make such objective determinations. This conclusion is consistent with the finding of the Sixth District Court of Appeals in *State* v. *Hintz* (Apr. 5, 1985), Lucas App. No. L-84-377, unreported. Accordingly, Nagel's first assignment of error is not well-taken.

### Assignment of Error II

"The trial court erred in admitting the results of the breathalyzer test because the state did not show by competent evidence that the machine was calibrated correctly."

Nagel argues the state failed to meet its burden of showing the breathalyzer machine has been properly calibrated in that it did not present specific evidence that the calibration solutions were kept in their original screw top containers and under refrigeration while not in use. This is one of the requirements of Instruction No. 009.

This specific issue was addressed by this court in *Akron* v. *Gradisher* (July 3, 1985), Summit App. No. 11986, unreported. The court there ruled results of the breathalyzer test were admissible, even though the officer failed to say the calibration solution had been refrigerated. The court distinguished *State* v. *Schell* (1984), 13 Ohio App. 3d 313, 13 OBR 390, 469 N.E. 2d 999, where the evidence specifically showed the calibration solution in fact had not been refrig-

erated, thereby violating the guidelines established by the state Director of Health. In *Gradisher,* as here, the officer testified the specimen was analyzed in accordance with methods approved by the Director of Health, and there was no evidence to the contrary. It is not necessary to present testimony that the solution was, in fact, refrigerated. *Gradisher, supra,* at 6. Nagel's second assignment of error is thus overruled and his conviction under R.C. 4511.19 (A)(1) is affirmed.

*Judgment affirmed.*

MAHONEY and QUILLIN, JJ., concur.