561 So.2d 883 (1990)
STATE of Louisiana, Appellee,
v.
Shelton R. ARMSTRONG, Appellant.
No. 21518-KA.
Court of Appeal of Louisiana, Second Circuit.
May 9, 1990.
Rehearing Denied June 14, 1990.
*884 Arthur Gilmore, Monroe, for appellant.
William J. Guste, Jr., Atty. Gen., James A. Norris, Dist. Atty., Mark Donahoe, Asst. Dist. Atty., Monroe, for appellee.
Before FRED W. JONES, Jr., SEXTON and LINDSAY, JJ.
LINDSAY, Judge.
The defendant, Shelton R. Armstrong, appeals his jury conviction for driving while intoxicated, third offense, a violation of LSA-R.S. 14:98.
The defendant was sentenced to serve three and one-half years at hard labor. Six months of this sentence was ordered to be served without benefit of parole, probation or suspension of sentence. Three years of the sentence was suspended and the defendant was placed on five years probation. The defendant was also ordered to pay a fine of $750 or, in default of payment of the fine, to serve 90 days in jail. We affirm the defendant's conviction and sentence.

FACTS
On the evening of August 11, 1988, the defendant drank a quantity of malt liquor. Around midnight, he received a call to pick up his wife from work. The defendant left his home in his vehicle to meet his wife.
At approximately 1 a.m. on August 12, 1988, Officers Gary Beasley and Bert Morales of the Monroe Police Department, observed the defendant driving his vehicle northbound on U.S. Hwy. 165. While observing the defendant for approximately two blocks, the officers saw the defendant run off the roadway on the right side four times.
The officers stopped the defendant's vehicle. The officers asked the defendant four or five times to exit his vehicle before he complied. The officers observed that the defendant used the door handle for assistance in getting out of the vehicle. The defendant smelled of alcohol, his speech was slurred and his eyes were bloodshot. The defendant had difficulty removing his wallet in order to produce his driver's license.
Officer Larry Matthews of the D.W.I. Enforcement Division of the Monroe Police Department was summoned to the scene. Several field sobriety tests were administered. The defendant was asked to recite the alphabet from the letter "c" to the letter "x". The defendant went past the letter "x" to the letter "z". The defendant also omitted several letters. The defendant performed poorly on the heel to toe test and rocked badly when performing the finger to nose test. A horizontal gaze nystagmus test was also administered. This test indicated that the defendant was intoxicated.
Based upon the defendant's erratic driving and his poor performance on the field sobriety tests, the officers determined that the defendant was intoxicated. He was therefore placed under arrest for driving while intoxicated, as well as for driving under suspension and improper lane usage. The defendant was unable or unwilling to provide a sufficient breath sample for the intoxilyzer test and this was registered as a refusal to take the test.
On September 14, 1988, the defendant was charged by bill of information with DWI, third offense. The defendant was tried by jury in March, 1989.
At trial, the defendant admitted having prior convictions for driving while intoxicated on July 30, 1985 and January 14, 1987. At the conclusion of the trial, the jury found the defendant guilty as charged of DWI, third offense.
The defendant has appealed his conviction, arguing that the trial court erred in allowing the state to introduce into evidence the results of the horizontal gaze nystagmus test without a proper foundation. The defendant also claimed there was insufficient evidence upon which to base his conviction. Two additional assignments of error made by the defendant are not briefed or argued in brief and are *885 therefore deemed to be abandoned. State v. Domingue, 298 So.2d 723 (La.1974).

ADMISSIBILITY OF HORIZONTAL GAZE NYSTAGMUS TEST
The defendant argues that the trial court erred in admitting into evidence testimony concerning a horizontal gaze nystagmus (HGN) test which the officers administered to him as part of a battery of field sobriety tests. The defendant claims the prosecution failed to show that the reliability of the HGN test, as a new scientific principle, has been "generally accepted" as required under Frye v. United States, 293 F. 1013 (D.C. Circuit 1923). The defendant also claims that the prosecution failed to lay a proper foundation for the admissibility of the test results.
Nystagmus is an involuntary jerking of the eyeball. This jerking is aggravated by central nervous system depressants, such as alcohol or barbituates. Ludington, Horizontal Gaze Nystagmus Test: Use in Impaired Driving Prosecution, 60 A.L.R. 4th 1129 (1988).
Horizontal gaze nystagmus is the inability of the eyes to maintain visual fixation as they move from center focus to the point of maximum deviation at the side. State v. Superior Court, County of Cochise, 149 Ariz. 269, 718 P.2d 171 (1976).
The manner in which this test is conducted is set forth in State v. Clark, 762 P.2d 853 (Mont.1988);
In the HGN test, the driver is asked to cover one eye and focus the other on an object held by the officer at the driver's eye level. As the officer moves the object gradually out of the driver's field of vision toward his ear, he watches the driver's eyeball to detect involuntary jerking.[1]
The issue of the admissibility of the HGN test appears to be a question of first impression in this state. We note, however, that the test has been used in other criminal prosecutions for DWI in Louisiana without objection. See State v. Nix, 535 So.2d 866 (La.App. 2d Cir.1988). We also take judicial notice that other cases have come before this court for review on writ application and on appeal where the HGN test was used without objection and was accepted by both the trial court and this court as material evidence on the issue of intoxication.
Although not specifically considered in Louisiana jurisprudence, the issues presented by the defendant have been addressed by other jurisdictions, with mixed results. California and, to some extent, Illinois have found the test results not to be admissible.
The defendant encourages us to follow the Illinois rationale, particularly, People v. Vega, 145 Ill.App.3d 996, 99 Ill.Dec. 808, 496 N.E.2d 501 (1986), in finding that, in this case, the HGN test was not admissible and that a proper foundation for its admissibility was not laid. However, in People v. Vega, supra, the court did not find that the test results could not be admitted in an impaired driving prosecution. Rather, the court found that under the specific facts of that case, a proper foundation had not been laid for the admission of the test.
In People v. Vega, supra, the court noted that the defendant had been administered an HGN test and was arrested for drunk driving. On appeal, scientific publications dealing with the correlation between blood alcohol content and nystagmus were attached to the appellate briefs, but had not been presented to the trial court. The court stated:
Based upon the record before us, and not upon the material submitted to this court which was not before the trial court, we decline to determine the validity and admissibility of the horizontal gaze nystagmus test. That decision must await another day and another case.
See also People v. Dakuras, 172 Ill. App.3d 865, 122 Ill.Dec. 791, 527 N.E.2d *886 163 (1988); People v. Smith, 182 Ill.App.3d 1062, 131 Ill.Dec. 712, 538 N.E.2d 1268 (1989); People v. Loomis, 156 Cal.App.3d Supp. 1, 203 Cal.Rptr. 767 (1984) in which HGN test results were not admitted.
However, several jurisdictions, including Ohio, Arizona, Montana, and Texas, have found that the results of HGN tests are admissible in drunk driving prosecutions.
In State v. Nagel, 30 Ohio App.3d 80, 506 N.E.2d 285 (1986), the court found that the HGN test was simply a field sobriety test based upon observation of behavior and was not in the nature of scientific tests such as polygraph examinations. Therefore, the court found that there was no issue of scientific reliability regarding the HGN test. The court stated:
It should be remembered that the gaze nystagmus test was one of a number of field sobriety tests administered by the officer to assist him in assessing [the defendant's] condition. Taken together, they were strongly suggestive of intoxication. It does not require an expert to make such objective determinations.
The most extensively researched and well-reasoned case dealing with the issue of admissibility of HGN tests is State v. Superior Court, County of Cochise, supra. In that case, the Arizona Supreme Court considered whether the HGN test was admissible to establish probable cause to arrest for driving under the influence of alcohol. The court also considered whether the test was admissible at the trial on the merits to establish the fact of intoxication. The court found that, when properly administered, the test was sufficiently reliable to establish probable cause to arrest for driving under the influence.
Regarding admissibility at trial to show intoxication, the court first considered whether the test, as a new scientific principle, met the requirements for admissibility under Frye v. United States, supra. The Frye standard is whether the technique has been generally accepted by the relevant scientific community.
The court found that the appropriate disciplines to determine whether the HGN test is generally accepted include "behavioral psychology, highway safety, and to a lesser extent, neurology and criminalistics." The court then went on to find that the HGN test satisfied the Frye standard. The court found as follows:
The evidence demonstrates that the following propositions have gained general acceptance in the relevant scientific community: (1) HGN occurs in conjunction with alcohol consumption; (2) its onset and distinctness are correlated to BAC [blood alcohol content]; (3) BAC in excess of .10% can be estimated with reasonable accuracy from the combination of the eyes' tracking ability, the angle of onset of nystagmus and the degree of nystagmus at maximum deviation; and (4) officers can be trained to observe these phenomenon sufficiently to estimate accurately whether BAC is above or below .10%. We therefore hold, with proper foundation as to the techniques used and the officer's ability to use it [citation omitted], testimony of defendant's nystagmus is admissible on the issue of a defendant's blood alcohol level as would be other field sobriety test results on the question of the accuracy of the chemical analysis.[2]
The court found that the HGN test could not be used to prove a specific degree of blood alcohol content, but it could be used to attack or corroborate chemical analysis for blood alcohol content. The court also found that the test results could be used as evidence of a defendant's behavior to prove he was "under the influence" of an intoxicating substance.[3]
*887 The court addressed the requirements of a proper foundation for the admissibility of the test. The court stated that a showing must be made that the expert who performed the test was qualified, that the technique was properly used, and the results were accurately recorded.
The decision in State v. Superior Court, County of Cochise, supra, is accompanied by extensive appendices listing numerous treatises and articles dealing with nystagmus and its use in determining whether a person is intoxicated. The reasoning in State v. Superior Court, County of Cochise, supra, has been followed, not only in Arizona, but also in Montana and Texas.
In Howard v. State, 744 S.W.2d 640 (Texas App.1987), the defendant contended that because the officer who administered the HGN test had not been tendered and accepted as an expert, the evidence of the defendant's HGN performance should not have been admitted. The court found that the HGN evidence was admissible for qualitative and not quantitative purposes regarding the issue of intoxication. As to the foundation requirements, the court stated "any lay witness may give an opinion regarding intoxication."
In State v. Clark, 762 P.2d 853 (Montana, 1988), the Montana court adopted the position of State v. Superior Court, County of Cochise, supra, in allowing the admission of HGN test results. The court held that a proper foundation had been laid for the admissibility of the test by a showing that the officer who administered the test had received training in its administration, was certified to administer the test, and that the test was administered in a proper manner.
We choose to follow the reasoning in State v. Superior Court, County of Cochise, supra, that the HGN test meets the standards of admissibility in Frye and, with a proper foundation, may be admitted as evidence of intoxication. We also follow the reasoning of State v. Superior Court, County of Cochise, supra, and its progeny, in finding that a proper foundation for admitting the test has been laid when a showing has been made that the officer who administered the test was trained in the procedure, was certified in its administration and that the procedure was properly administered.
In the present case, we find that a proper foundation was laid. Therefore, the trial court did not err in admitting testimony regarding the defendant's performance on the HGN test.
The evidence in this case shows that Officer Larry Matthews, who administered the HGN test, was part of a DWI task force and had extensive training in the use of an intoxilyzer machine and in field sobriety testing. The officer had been specifically trained in administering the HGN test and had been certified by his department in administering this test. Officer Matthews then described the manner in which the test was administered, demonstrating that the test was properly conducted.
Therefore, we find that a proper foundation was laid in this case for the admissibility of the HGN test results. The defendant's argument that the test results should have been excluded from evidence at trial is without merit.

SUFFICIENCY OF EVIDENCE
The defendant also claims there is insufficient evidence upon which to base his conviction for driving while intoxicated, third offense. This argument is meritless.
In examining the sufficiency of the evidence, due process requires that the evidence, when viewed in a light most favorable to the prosecution, must be sufficient for a reasonable trier of fact to conclude that the essential elements of the offense were proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Trosclair, 443 So.2d 1098 (La.1983), cert. dismissed, 468 U.S. 1205, 104 S.Ct. 3593, 82 L.Ed.2d 889 (1984); State v. Prudhomme, 499 So.2d 236 (La.App. 2d Cir.1986); State v. Jackson, 480 So.2d 937 (La.App. 2d Cir. 1985), writ denied 484 So.2d 668 (La.1986); State v. Davis, 505 So.2d 162 (La.App. 4th Cir.1987).
*888 In the present case, the defendant was charged under 14:98 with operating a vehicle while under the influence of alcoholic beverages, third offense. The elements of the offense are (1) operating a vehicle, (2) doing so while under the influence of alcohol, and (3) prior convictions for the same offense.
The record contains a stipulation that the defendant had two previous convictions for driving while intoxicated. Therefore, proof of prior convictions to support the present charge is not an issue in this case.
It is also uncontested that the defendant was driving a vehicle prior to his arrest. The defendant also admits that he drank some alcohol on the evening before his arrest. However, the defendant contends that he stopped drinking around 8 p.m. on August 11, 1988 and that his arrest did not occur until approximately 1 a.m. on August 12, 1988. The defendant contends that there is insufficient evidence to show that he was under the influence of alcohol at the time he operated his vehicle.
Several persons present at the defendant's house on the evening prior to his arrest testified that after drinking a couple of cans of malt liquor, the defendant retired to his bedroom at approximately 8 p.m. They also testified that the defendant left the house some time after midnight. However, there was no showing as to whether the defendant drank while in his room or after he left his home.
Other witnesses who testified on behalf of the defendant saw him at approximately 3 a.m. on August 12, 1988, when he was released from jail on bond and at approximately 7 a.m. when he reported for work. These witnesses testified that when they observed the defendant, he did not appear intoxicated. However, due to the lapse of time between the defendant's arrest and the time he was observed by these witnesses, this testimony does not overcome the evidence presented by the prosecution to show that the defendant was under the influence of alcohol at the time he was observed operating his vehicle by officers of the Monroe Police Department.
All the witnesses who testified on behalf of the defendant stated that they knew of no illness or physical impairment suffered by the defendant which would cause the problems the defendant exhibited at the time of his arrest with his speech, balance, and coordination.
The record reveals that the evidence, when considered in accordance with the standards set forth in Jackson v. Virginia, supra, was sufficient to prove that the defendant was under the influence of alcohol when he operated his vehicle on August 12, 1988.
The defendant admitted consuming two cans of malt liquor that evening before his arrest. Officers Beasley, Morales and Matthews testified that the defendant smelled of alcohol, was unsteady on his feet and performed poorly on several field sobriety tests, including the horizontal gaze nystagmus test.[4]
Such evidence is sufficient to establish that the defendant had been drinking alcohol and that it influenced his ability to operate his vehicle. State v. Nix, supra; State v. Walker, 451 So.2d 679 (La.App. 2d Cir.1984), writ denied 456 So.2d 1016 (La. 1984); State v. Cichirillo, 440 So.2d 934 (La.App. 2d Cir.1983); State v. Davis, 505 So.2d 162 (La.App. 4th Cir.1987); State v. Chestnut, 462 So.2d 674 (La.App. 4th Cir. 1984). Therefore, the state carried its burden of proving the essential elements of the charged offense.
In the present case, there was sufficient evidence to show that the defendant was under the influence of alcohol while operating his vehicle and the jury correctly found the defendant guilty as charged.

CONCLUSION
For the reasons stated above, we affirm the defendant's conviction and sentence.
AFFIRMED.

*889 ON APPLICATION FOR REHEARING
Before FRED W. JONES, Jr., SEXTON, LINDSAY, NORRIS and HIGHTOWER, JJ.
Rehearing denied.
NOTES
[1] In the present case, Officer Larry Matthews, who performed the test, testified that he administers the test by passing either his finger or a pen slowly in front of the subject's face, asking the subject to follow the object, looking to the side while keeping the head still. If the eyes jerk while following the pen or finger, this is indicative of intoxication.
[2] Contra People v. Loomis, supra.
[3] We note that apparently, in State v. Superior Court, County of Cochise, supra, the defendant underwent chemical blood analysis and was charged with having a blood alcohol content above a certain level. There the court held that results of the HGN test were admissible to corroborate a chemical analysis or to prove that the person was "under the influence" when no chemical analysis had been made. In the present case, the defendant was charged with being "under the influence." No chemical analysis was made.
[4] Although we find that the HGN field sobriety test was properly admitted, even without the use of this test, the record contains sufficient evidence upon which to base the defendant's conviction for driving while intoxicated.