THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. ROBERT E. BUENING, Defendant-Appellee.

Fifth District   No. 5—91—0084

Opinion filed May 26, 1992.—Rehearing denied June 16, 1992.

Paula Phillips, State's Attorney, of Effingham (Kenneth R. Boyle, Stephen E. Norris, and Kendra S. Mitchell, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

R. Edward Veltman, Jr., of Crain, Cooksey, Veltman & Miller, Ltd., of Centralia, for appellee.

JUSTICE RARICK delivered the opinion of the court:

Defendant, Robert E. Buening, was arrested on October 18, 1990, for driving under the influence of alcohol in violation of section 11—501(a)(2) of the Illinois Vehicle Code (Ill. Rev. Stat. 1989, ch. 95½,

par. 11—501(a)(2)). On November 9, 1990, he was charged by information with driving under the influence of alcohol. On January 3, 1991, defendant filed a motion *in limine* seeking suppression of all evidence regarding the administration of the horizontal gaze nystagmus (HGN) test. At the hearing on defendant's motion, the State's Attorney requested the matter be set for an evidentiary hearing. Defendant resisted the State's request, arguing that the results of an HGN test were inadmissible in the prosecution of a charge of driving under the influence of alcohol. The State asserted the test results were admissible as a factor considered by the arresting officer in reaching his conclusion defendant was under the influence of alcohol, as opposed to establishing the actual blood-alcohol concentration (BAC) of defendant's blood. After taking the case under advisement, the trial court granted defendant's motion *in limine* stating that the HGN "results should be inadmissible for any reason, including the limited purpose of showing the reason or basis for the arrest, *i.e.*, defendant's intoxication." The court further stated: "[E]ven if HGN testing was relevant and admissible for the limited purpose of showing defendant's intoxication, the prejudice of such 'scientific' evidence on the issue of blood-alcohol concentration far outweighs its probative value on the issue of defendant's intoxication." The State timely filed a certificate of substantial impairment and notice of appeal. We reverse and remand.

Nystagmus, a physiological phenomenon, is a term used to describe an involuntary jerking of the eyeball. "[It] *** is characterized by a slow drift, usually away from the direction of gaze, followed by a quick jerk of recovery in the direction of gaze. A motor disorder, *it may be congenital or due to a variety of conditions affecting the brain, including ingestion of drugs such as alcohol* and barbiturates, palsy of lateral or vertical gaze, disorders of the vestibular apparatus and brainstem and cerebellar dysfunction." (Emphasis added.) (The Merck Manual of Diagnosis and Therapy 1980 (14th ed. 1982).) Horizontal gaze nystagmus then is the inability of the eyes to maintain visual fixation as they are turned from side to side or move from center focus to the point of maximum deviation at the side. (*State v. Garrett* (1991), 119 Idaho 878, 881, 811 P.2d 488, 491; *State v. Armstrong* (La. Ct. App. 1990), 561 So. 2d 883, 885.) The horizontal gaze nystagmus test as routinely performed by law enforcement officers consists of:

> "the driver [being] asked to cover one eye and focus the other on an object (usually a pen) held by the officer at the driver's eye level. As the officer moves the object gradually out of the driver's field of vision toward his ear, he watches the driver's eyeball to detect involuntary jerking. The test is repeated with

the other eye. By observing (1) the inability of each eye to track movement smoothly, (2) pronounced nystagmus at maximum deviation and (3) onset of the nystagmus at an angle less than 45 degrees in relation to the center point, the officer can estimate whether the driver's blood alcohol content (BAC) exceeds the legal limit of .10 percent." (*State v. Superior Court* (1986), 149 Ariz. 269, 271, 718 P.2d 171, 173.)

(See also Annot., 60 A.L.R.4th 1129 (1988).) Defendant argues HGN tests are inadmissible in Illinois for the purpose of proving a defendant's level of blood-alcohol concentration under *People v. Dakuras* (1988), 172 Ill. App. 3d 865, 527 N.E.2d 163. *Dakuras* does, indeed, hold that the results of an HGN test to demonstrate BAC are inadmissible in a prosecution under section 11—501(a) of the Illinois Vehicle Code (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501(a)). This is so because a HGN test is not a chemical test to determine BAC as required by section 11—501.2(a). But, the court in *Dakuras* also specifically stated it did not need address whether HGN test results may be admissible as evidence of intoxication other than to show BAC of .10 or more in a driving under the influence prosecution as the State did not raise the issue. (*Dakuras*, 172 Ill. App. 3d at 870, 527 N.E.2d at 167.) *Dakuras* therefore does not answer the question presented to us here. The precise issue before us appears to be one of first impression in Illinois.

Turning to other cases in Illinois which refused to admit results of HGN tests, *People v. Vega* (1986), 145 Ill. App. 3d 996, 496 N.E.2d 501, concluded only that the State failed to lay a proper foundation through expert testimony to determine the validity of such testing. (145 Ill. App. 3d at 1000-01, 496 N.E.2d at 505.) Likewise, *People v. Smith* (1989), 182 Ill. App. 3d 1062, 538 N.E.2d 1268, held HGN test results were erroneously admitted into evidence when the State failed to lay a proper foundation through expert testimony to determine the validity of the test. (182 Ill. App. 3d at 1069, 538 N.E.2d at 1272.) On the other hand, the court in *People v. Seymoure* (1987), 158 Ill. App. 3d 1038, 511 N.E.2d 986, determined that "[t]he HGN test, coming into use as law enforcement officers obtain the necessary training, appears to produce at least reasonably accurate readings of blood-alcohol content based upon statistical studies." (158 Ill. App. 3d at 1039, 511 N.E.2d at 987.) In *Seymoure*, the responding officer testified about his educational background in giving the HGN test, as well as the procedure which he followed in obtaining credible results. As no objection was made to the officer's testimony, and as the defendant did not present any evidence which would refute either the officer's

qualifications or the foundation for his testimony relating to the test, the court found the issue waived on appeal. (158 Ill. App. 3d at 1039-40, 511 N.E.2d at 987.) And in *People v. Nunes* (1986), 143 Ill. App. 3d 1072, 494 N.E.2d 202, defendant's failure to pass the HGN test when arrested was considered in upholding the jury's verdict of driving under the influence although the issue of the test's admissibility apparently was not raised by defendant. 143 Ill. App. 3d at 1076, 494 N.E.2d at 205.

In contexts other than prosecution of DUI, this court itself has twice addressed the issue of admission of HGN test results in recent years. In *People v. Griffith* (1986), 143 Ill. App. 3d 683, 493 N.E.2d 413, we concluded HGN test results were admissible in an implied consent hearing as evidence to establish reasonable cause to arrest the defendant for driving under the influence of alcohol. (143 Ill. App. 3d at 684-85, 493 N.E.2d at 415.) And, in the context of a statutory summary suspension hearing, in *People v. Furness* (1988), 172 Ill. App. 3d 845, 526 N.E.2d 947, we found that the results of the HGN test were sufficient to establish probable cause that an offense had been committed, warranting arrest. We did state, however, at that time we found no cases passing on the issue of the test's general acceptance in the scientific community or its admissibility for the purposes of proving driving under the influence. (172 Ill. App. 3d at 849, 526 N.E.2d at 949.) And recently in *People v. Jebelian* (1990), 204 Ill. App. 3d 11, 561 N.E.2d 1079, another statutory summary suspension case, the third district summarily concluded the arresting officer's observations of the defendant's inability to follow directions to perform a HGN test were admissible in establishing probable cause for arrest even though the HGN test itself "has been criticized and is not evidence." 204 Ill. App. 3d at 14, 561 N.E.2d at 1081.

Cases from other States have addressed the issue of the admissibility of HGN test results in prosecutions for driving under the influence of alcohol. *State v. Superior Court* (1986), 149 Ariz. 269, 718 P.2d 171 (*en banc*) represents one of the more extensively researched and well-reasoned decisions on the subject. In *State v. Superior Court*, the Arizona Supreme Court initially held that the horizontal gaze nystagmus test, when properly administered by a trained police officer, is sufficiently reliable to be a factor in establishing probable cause to arrest a driver for driving under the influence. The court believed there had been sufficient scrutiny of the HGN test to permit a conclusion as to reliability and that the HGN test did indeed satisfy the *Frye* standard for admissibility. In order to ensure reliability, *Frye v. United States* (D.C. Cir. 1923), 293 F. 1013, mandates general ac-

ceptance of the scientific principle and procedure by the relevant scientific communities. The appropriate disciplines used by the Arizona Supreme Court to determine the acceptability of HGN tests included "behavioral psychology, highway safety and, to a lesser extent, neurology and criminalistics." (*State v. Superior Court*, 149 Ariz. at 278, 718 P.2d at 180.) While the HGN test satisfied the *Frye* test for reliability, the court concluded it was admissible only to corroborate or attack, not to quantify, the chemical analysis of the accused's blood-alcohol content. In the absence of chemical analysis, HGN testing could not be used to establish the defendant's level of blood alcohol. 149 Ariz. at 280, 718 P.2d at 182.

Other jurisdictions which have followed *State v. Superior Court* include Idaho, Louisiana, Montana and Texas. In *State v. Garrett* (1991), 119 Idaho 878, 811 P.2d 488, for example, the Idaho Supreme Court also concluded that the HGN test satisfied the *Frye* standard for admissibility. It too found the test results were admissible in driving under the influence prosecutions to supply probable cause for arrest but not to establish the defendant's blood-alcohol level in the absence of chemical analysis of the defendant's blood, breath, or urine. (119 Idaho at 881, 811 P.2d at 491.) In *State v. Armstrong* (La. Ct. App. 1990), 561 So. 2d 883, *appeal denied* (1990), 568 So. 2d 1077, the court, characterizing the HGN test as a field sobriety test, held that such test results meet the standards of admissibility under *Frye* and may be admitted as evidence of intoxication where a proper foundation has been laid, *i.e.*, showing that the administering officer was trained in the procedure, that the officer was certified in its administration, and that the procedure was properly administered. (561 So. 2d at 887.) Likewise, the court in *Howard v. State* (Tex. App. 1987), 744 S.W.2d 640, followed *State v. Superior Court* in holding that HGN evidence is properly admitted on the issue of intoxication but not to quantify precise blood-alcohol content. (744 S.W.2d at 641.) Finally, the Montana Supreme Court in *State v. Clark* (1988), 234 Mont. 222, 762 P.2d 853, held that evidence pertaining to the results of an HGN test was admissible in a prosecution for driving under the influence of alcohol. The evidence, however, was to be admitted like all relevant scientific evidence in the same manner as other expert testimony, without application of the foundation requirements for expert testimony under the "general acceptance doctrine" enunciated in *Frye*. (234 Mont. at 227, 762 P.2d at 856-57.) The administering officer in *Clark* testified he was certified through the Montana Law Enforcement Academy, had completed the required number of training hours, and had administered the test in a proper manner. The court

concluded no other foundation need be shown for the admission of the HGN results for the purpose of establishing impairment giving rise to probable cause to arrest.

Other jurisdictions which view the HGN test as no more scientific than other field sobriety tests do not require any expert interpretation before admitting test results into evidence. In *State v. Nagel* (1986), 30 Ohio App. 3d 80, 506 N.E.2d 285, the court stated: "The gaze nystagmus test, as do the other commonly used field sobriety tests, requires only the personal observation of the officer administering it. It is objective in nature and does not require expert interpretation. Objective manifestations of insobriety, personally observed by the officer, are always relevant where, as here, the defendant's physical condition is in issue \*\*\*. \*\*\* [I]t does not require an expert to make such objective determinations." (30 Ohio App. 3d at 80-81, 506 N.E.2d at 286.) Likewise, the Ohio Supreme Court in *State v. Bresson* (1990), 51 Ohio St. 3d 123, 554 N.E.2d 1330, found that the HGN test was no different from any other field sobriety test such as finger-to-nose, walk-and-turn, or one-leg-stand and therefore held that the only requirement prior to admission of HGN evidence was testimony about the officer's knowledge of the test, his training, and his ability to interpret his observation. The court concluded the HGN test cannot be compared to other scientific tests such as polygraphic examinations because no special equipment is required for its administration. (51 Ohio St. 3d at 129, 554 N.E.2d at 1336.) Although not raised by the parties, the court further held HGN evidence was admissible only when a properly qualified officer testified regarding the issue of probable cause to arrest and whether the defendant was operating a motor vehicle under the influence of alcohol. HGN evidence was held inadmissible to show the driver's exact BAC level. 51 Ohio St. 3d at 129, 554 N.E.2d at 1336.

Testimony by a properly trained police officer with respect to the administration and results of the HGN test was found admissible without need for further scientific evidence by the Iowa Supreme Court in *State v. Murphy* (Iowa 1990), 451 N.W.2d 154. In *Murphy*, the testing officer was an 11-year police force veteran with specialized training in the field of alcohol-related law enforcement. He was trained in the administration of HGN testing and other field sobriety tests through the Iowa Law Enforcement Academy and was certified not only to administer HGN tests but to serve as an instructor for the academy. The officer described the HGN test procedure for the jury and explained the procedure for assigning points based on the onset of nystagmus. The court concluded the HGN testing procedures de-

scribed by the officer did not depart significantly from his objective descriptions of other field sobriety tests which he had administered to the defendant. 451 N.W.2d at 158.

In *People v. Ojeda* (1990), 225 Cal. App. 3d 404, 275 Cal. Rptr. 472, the court rejected the defendant's argument that the testimony of the officer who administered the HGN test was improperly admitted because the officer was a lay witness who lacked the medical expertise to correlate HGN with intoxication. Instead, the court found "[t]he observation of HGN in a person and its interpretation as an effect of alcohol intoxication do not necessarily require expertise in physiology, toxicology, or any other scientific field. The nystagmus effect can be observed without mechanical, electronic or chemical equipment of any kind. At least in the simple form presented in this case, it requires no more medical training than administration of the other field sobriety tests, such as the one-legged balance." (225 Cal. App. 3d at 408, 275 Cal. Rptr. at 474.) Without a showing of scientific expertise, however, the court agreed the officer was unqualified to make any medical correlation between HGN and BAC and specifically stated the HGN test was not a reliable indicator of intoxication for the purposes of meeting the *Frye* test. 225 Cal. App. 3d at 409, 275 Cal. Rptr. at 474-75.

Still other jurisdictions have held that HGN tests do require expert testimony regarding their scientific reliability and acceptance. In *State v. Borchardt* (1986), 224 Neb. 47, 395 N.W.2d 551, for example, the Nebraska Supreme Court concluded it was error to allow the testing officer to testify about the HGN test he performed upon the defendant. The court found fault with the officer's testimony in that the record contained "no competent evidence that this new test is valid, that is, that it in fact reveals the presence of intoxication. Evidence of a test result cannot be characterized as 'scientific' or qualify as 'technical or other specialized knowledge,' *** unless and until it is established that the test result demonstrates what it is claimed to demonstrate." (224 Neb. at 58, 395 N.W.2d at 559.) In *Commonwealth v. Miller* (1987), 367 Pa. Super. 359, 532 A.2d 1186, the Pennsylvania Supreme Court also concluded that the results of the HGN test were scientific evidence based on a scientific principle, and that the party seeking to admit the results of an HGN test as evidence must establish that the scientific evidence from which the test is based is generally accepted by scientists active in the appropriate scientific communities. The court ruled that when the only testimony concerning the validity of the HGN test came from the officer who performed it, with his only specialized training in the area being a two-day course

on the use of HGN tests and field sobriety tests, there was an inadequate foundation for the admission of the testimony regarding the results of the tests. 367 Pa. Super. at 366-67, 532 A.2d at 1189-90.

In *State v. Reed* (1987), 83 Or. App. 451, 732 P.2d 66, the court held that the HGN test was scientific evidence based on a novel scientific principle, and in the absence of some expert evidence in the record in regard to the correlation between alcohol consumption and nystagmus, it was error to admit the results of the HGN test. (83 Or. App. at 455-56, 732 P.2d at 68-69.) Although the trooper who administered the HGN test might be qualified as an expert in giving the test, she was not qualified as an expert in the reliability of the relationship, if any, between alcohol consumption and nystagmus. The supreme court of West Virginia similarly held in *State v. Barker* (W. Va. 1988), 366 S.E.2d 642, that testimony of the testing officer was inadmissible when the State offered neither evidence to demonstrate that the HGN test was reliable nor evidence concerning the scientific principle upon which the HGN was based. The court determined that it was reasonable to require *in camera* disclosure of the methodology, scientific reliability, and results of the HGN test, as well as evidence of whether accepted test procedures were followed by qualified personnel in a particular case. The court further stated "demonstration of reliability should include both testimony by expert witnesses and relevant articles and scholarly publications." (366 S.E.2d at 646.) Even if the HGN test were determined to be reliable, however, the expert's testimony still was admissible only as to evidence that the driver was under the influence of alcohol, not to the defendant's actual BAC. 366 S.E.2d at 646.

As the foregoing discussion demonstrates, there is a growing body of law concerning the nature of the HGN test, the requirements for entering HGN test results into evidence, and the purposes for which such results may be entered into evidence. According to the United States Department of Transportation Test Manual, as devised for use by law enforcement agencies, the HGN test is the single most accurate field test used in determining whether a person is alcohol impaired. (United States Department of Transportation, National Highway Safety Administration, *Improved Sobriety Testing* 4 (1984), cited in *Bresson*, 51 Ohio St. 3d at 125, 554 N.E.2d at 1332.) When the HGN test is used in conjunction with the walk-and-turn field sobriety test, an officer's ability to detect whether a driver is under the influence of alcohol is improved. (See *Improved Sobriety Testing* at 4, cited in *Bresson*, 51 Ohio St. 3d at 126, 554 N.E.2d at 1333.) Such factors in conjunction with the reasoning in *State v. Superior Court*, lead us

to believe the HGN test meets the standards of admissibility under *Frye* and HGN test results may be admitted as evidence of intoxication as long as a proper foundation for admitting such evidence has been laid. A proper foundation should consist of describing the officer's education and experience in administering the test and showing that the procedure was properly administered. Although we also sanction the use of HGN test evidence to corroborate or attack chemical analysis of an accused's blood-alcohol content, we are not saying such evidence may be used to quantify it, in other words, utilized to establish a defendant's BAC in the absence of a chemical analysis of the defendant's blood, breath, or urine. We therefore hold HGN test results are admissible, as is any other evidence of a defendant's behavior, to prove that the defendant is under the influence of alcohol, provided a proper foundation has been laid.

Accordingly, we reverse the trial court's grant of defendant's motion *in limine* and remand this cause for an evidentiary hearing consistent with this opinion.

Reversed and remanded.

GOLDENHERSH, P.J., and HARRISON, J., concur.