NO. 4-95-0574

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from

Plaintiff-Appellee, ) Circuit Court of

v. ) McLean County

JAMES D. KIRK, ) No. 951668

Defendant-Appellant. )

) Honorable

) Donald D. Bernardi,

) Judge Presiding.

_________________________________________________________________

JUSTICE COOK delivered the opinion of the court:

Defendant James D. Kirk was charged with driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(2) (West 1994)) and improper lane usage for driving the wrong direc­tion on a one-way road (625 ILCS 5/11-708 (West 1994)).  Follow­ing a jury trial, defendant was convicted on both counts.  Defendant ap­peals, arguing that it was error for the trial court to allow certain scientific testimony without conducting a 
Frye
 hearing.  See 
Frye v. United States
, 293 F. 1013 (D.C. Cir. 1923).  We agree a 
Frye
 hearing should have been con­duct­ed but hold that any error was harmless.

The evidence established that defendant watched the second half of the Super Bowl at his son's Bloomington home.  Defendant arrived at the house during halftime and did not appear to be impaired.  He remained at the home for a couple of hours, through the second half.  During this time, defendant and his son drank some beer from a 12-pack and ate some snacks.  Defen­dant testified he consumed three or four beers "at the most."  Defendant's daughter-in-law, Joyce Kirk, testified there was still beer left in the 12-pack when defendant left her home, but she did not know how may beers actually remained.  She did not think defendant was impaired when he left and testified his walk and speech were no different than usual.  Joyce also stated that defendant walks with a limp because he has bad knees.

Defendant, who does not live in Bloomington, testified that when visiting his son he will generally only travel the Bloomington roads he was driving at the time of his arrest.  Defen­dant testified that after leaving his son's house, he decided to visit his other son.  He then decided it was too late to do so and turned on Oakland Avenue to head east.  As he approached Lee Street and saw the traffic lights, defendant realized he was driving the wrong way on a one-way street.  He made a right turn when he got to McArthur and was stopped shortly thereafter.

Officer Darrin Woodin saw defendant driving the wrong way on Oakland Avenue.  He watched defendant drive 300 to 400 feet before he turned off Oakland Avenue and onto Madison Street.  Woodin did not see defendant violate any other traffic laws prior to the stop.  Woodin smelled alcohol as he approached defendant's vehicle.  Woodin believed the smell of alcohol emanated from defendant and not defendant's car because the smell became stronger when defendant spoke.  Woodin described defendant's speech as being sometimes clear and sometimes "drift[ing] off into a mumble that was almost unintelligible."  Woodin asked defendant to take the field-sobriety tests.

Woodin first administered the horizontal gaze nystagmus (HGN) test.  This test involves testing a suspect's eye movement in an effort to determine intoxication.  Based upon the HGN test, Woodin believed defendant to be intoxi­cated.  Woodin then asked defendant to "recite the alphabet from E through N."  According to Woodin, defendant skipped the letters "H" and "I" and contin­ued through the letter "Z."  Woodin said defendant drifted "in and out of the slurred speech."

Woodin demonstrated, then asked defendant to perform, the finger-to-nose test.  Defendant reportedly refused to take the test, stating that it was "impossible."  Woodin did not ask defendant to perform either the walk-and-turn test or the one-leg-stand test.  Woodin explained that, in light of defendant's bad knees, he did not think the tests would be fair.  Based upon the tests and his observations of defendant's move­ments, Woodin was of the opinion that defendant was impaired.  Woodin also testified that, in response to questions, defendant said he had been at a bar and that he had consumed a few drinks.  Woodin's police report made no mention of defendant's statement that he had been at a bar.  Defendant denied stating that he had been at a bar.  Woodin noticed three to five empty beer cans in the backseat of defendant's car.  Defendant testi­fied he had picked these cans up for recy­cling.  

Defendant was arrested for DUI.  After being read the motorist warning, defendant refused to take the breathalyzer.  Woodin testified defendant said he would not pass the test anyway.  At trial, defendant explained that he did not trust the machine, that he had heard several people talk about the test and he did not believe anyone ever passed the test.  Defendant was found guilty and ap­peals.

Defendant raises only one argument upon appeal, that it was improper for the trial court to allow Woodin's testimony concerning the HGN test.  Defendant argues the HGN test is based upon scien­tific princi­ples and that an Illi­nois court has yet to properly determine whether the HGN test is generally accepted within the scientific community.

Nystagmus, a physiological phenomenon, is a term used to describe an involuntary jerking of the eyeball.  
People v. Buening
, 229 Ill. App. 3d 538, 539, 592 N.E.2d 1222, 1223 (1992); see also Webster's Tenth New Collegiate Dictionary 800 (1996) ("a rapid involuntary oscillation of the eyeballs").  Nystag­mus can be congen­ital or it may be caused by "'a variety of conditions affecting the brain, including ingestion of drugs such as alcohol and barbiturates, palsy of lateral or vertical gaze, disorders of the vestibular apparatus and brainstem and cerebellar dysfunc­tion.'"  (Emphasis omitted.)  
Buening
, 229 Ill. App. 3d at 539, 592 N.E.2d at 1223, quoting The Merck Manual of Diagnosis and Therapy 1980 (14th ed. 1982); see also 
Schultz v. State
, 106 Md. App. 145, 180-81, 664 A.2d 60, 77 (1995) (listing 38 possible causes of nystagmus in addi­tion to alcohol consumption).  The HGN test, as routinely per­formed by law enforcement officers, con­sists of:

"'the driver [being] asked to cover one eye and focus the other on an object (usually a pen) held by the officer at the driver's eye level.  As the officer moves the object grad­ually out of the driver's field of vision toward his ear, he watches the driver's eye­ball to detect involuntary jerking.  The test is repeated with the other eye.  By observing (1) the inability of each eye to track move­ment smoothly, (2) pronounced nystagmus at maximum deviation[,] and (3) onset of the nys­tagmus at an angle less than 45 degrees in relation to the center point, the officer can estimate whether the driver's blood[-]alco­hol content (BAC) exceeds the legal limit of [0.10].'"  
Buening
, 229 Ill. App. 3d at 539-40, 592 N.E.2d at 1223, quoting 
State v. Supe­rior Court
, 149 Ariz. 269, 271, 718 P.2d 171, 173 (1986) (
en
 
banc
) (hereinafter 
Blake
).

In 
Buening
, the defendant filed a motion 
in
 
limine
 seeking to exclude the results of his HGN test.  The trial court granted the motion, and the State, after filing a certificate of impair­ment, appealed.  The 
Buening
 court reviewed Illinois case law concern­-

ing the admissibility of HGN test results as well as the case law of other states.  Relying upon 
Blake
 as "one of the more exten­sively researched and well-reasoned decisions on the sub­ject" (
Buening
, 229 Ill. App. 3d at 541, 592 N.E.2d at 1225), the court concluded that HGN testing meets the 
Frye
 standard (see 
Frye
, 293 F. 1013; 
People v. Baynes
, 88 Ill. 2d 225, 430 N.E.2d 1070 (1981)) and that "HGN test results are admissi­ble, as is any other evidence of a defendant's behav­ior, to prove that the defendant is under the influence of alcohol, provided a proper foundation has been laid" (
Buening
, 229 Ill. App. 3d at 546, 592 N.E.2d at 1227-28).  
Buening
, a fifth district opinion, has been followed by the third district in 
People v. Wiebler
, 266 Ill. App. 3d 336, 640 N.E.2d 24 (1994).

This court addressed HGN testing in 
People v. Vega
, 145 Ill. App. 3d 996, 496 N.E.2d 501 (1986),
 a DUI case in which the trial court admitted evidence that the defendant had failed the test.  The entire foundation for the test's admission was the testimony of the police officer explaining the procedure of the test.  There was no testimony about either the officer's training in the adminis­tration of the test or the scientific validity of the test.  This court noted that when evidence "beyond the general knowl­edge of the average individual is sought to be introduced, a proper founda­tion by way of expert testimony is required.  This becomes especially true of techno­logical evi­dence.  It is a natural inclination of jurors to regard such evidence as extreme­ly trustworthy."  
Vega
, 145 Ill. App. 3d at 1000, 496 N.E.2d at 504.  Perhaps recognizing that a 
Frye
 hearing should have been conduct­ed in the trial court, both parties in 
Vega
 submit­ted materi­als to this court in support of their position as to the validity (or invalidity) of the HGN test.  Those materials had not been pre­sented to the trial court.  Determining that the foundation presented at trial was insuffi­cient to admit the HGN test evi­dence, we declined to follow 
Blake
 and declined the oppor­tunity to rule upon the validity and admissibility of the HGN test:  "That decision must await another day and another case.  Exhibits or attachments to appel­late briefs, not seen by the trial court, are improper."  
Vega
, 145 Ill. App. 3d at 1001, 496 N.E.2d at 505.  
When read as a whole, 
Vega
 stands for the propo­si­tion that the HGN test evidence should not have been admitted in the absence of a finding that it met the 
Frye
 stan­dard.  
Vega
 was followed by the second district in 
People v. Smith
, 182 Ill. App. 3d 1062, 538 N.E.2d 1268 (1989).

In 
People v. Hood
, 265 Ill. App. 3d 232, 638 N.E.2d 264 (1994), this court was faced with the question whether the results of an HGN test were admissible in an implied-consent proceeding.  This court first noted that neither 
Vega
 nor 
Buening
 dealt with the issue then before the court, statutory summary suspen­sion of drivers' licenses.
  This court then said:

"As the fifth district determined the HGN test was sufficiently reliable to meet the 
Frye
 standard for admissibility in crimi­nal proceedings, we are persuaded it is suf­ficiently reliable to be admitted in implied-consent proceedings; thus, where evidence involving the HGN test is sought to be admit­ted in implied-consent proceedings, the State need not call an expert witness to attest to its reliability.  Accordingly, the circuit court properly overruled Hood's objection based on lack of scientific reliability."  
Hood
, 265 Ill. App. 3d at 245-46, 638 N.E.2d at 274.

See also 
People v. Rose
, 268 Ill. App. 3d 174, 181, 643 N.E.2d 865, 870 (1994) ("Generally, field-sobri­ety tests are ad­missi­ble not only in pro­ceedings to determine whether proba­ble cause ex­isted, but also in criminal proceedings to prove intoxica­tion.  (See 
Peo­ple v. Buening
 (1992), 229 Ill. App. 3d 538, 592 N.E.2d 1222 ([HGN] test)").  
This case presents the specif­ic issue, not involved in 
Hood
 and 
Rose
, of whether it is neces­sary to conduct a 
Frye
 hearing prior to the admission of the result of a HGN test in a criminal trial for DUI.  We con­clude that a 
Frye
 hearing is necessary.

The 
Buening
 court relied primarily upon the 
Blake
 decision in reaching its conclusion.  
In 
Blake
, the defen­dant made pretrial motions (1) to dismiss the prosecu­tion for lack of probable cause to arrest, and (2) to preclude the admission of HGN evidence at her upcoming DUI trial.  The trial court conduct­ed an evidentiary hearing, at which the prosecution presented four witnesses.  The first was Dr. Marcelline Burns, a research psychologist who studied the effect of alcohol on behavior.  Burns testified the HGN test, when used in conjunction with walk-and-turn and one-leg-stand tests, resulted in 83% accura­cy in determining BAC above and below 0.10.  
Blake
, 149 Ariz. at 271, 718 P.2d at 173.  Burns also testified "the HGN test had been accept­ed as valid by the highway safety field, including the [National Highway Traffic Safety Administra­tion (NHTSA)], Finnish re­searchers, state agencies such as the California Highway Patrol, Arizona Highway Patrol, Washington State Police, and numerous city agencies."  
Blake
, 149 Ariz. at 272, 718 P.2d at 174.  The other three witnesses were police officers.  Their testimony suggested that the HGN test is between 80% and 90%  accu­rate, and that it is particularly "useful in detect­ing violations where a driver with [a] BAC over 0.10 is able to pull himself together sufficiently to pass the traditional field[-] sobriety tests and thus avoid arrest and subsequent chemi­cal testing."  
Blake
, 149 Ariz. at 272, 718 P.2d at 174.  The trial court concluded that the HGN test represented a new scien­tific princi­ple subject to the 
Frye
 standard of admissibility, that the test did not satisfy 
Frye
, and therefore could not form the basis of probable cause.  
Blake
, 149 Ariz. at 272, 718 P.2d at 174.  The appellate court reversed, noting that the 
Frye
 standard applied only to the admissibility of evidence at trial, not to probable cause for arrest, and that the HGN test was suffi­ciently reli­able to form the basis of probable cause.  Alternately, the appellate court found the HGN test did satis­fy the 
Frye
 standard.  
Blake
, 149 Ariz. at 272-73, 718 P.2d at 174-75.

The Arizona Supreme Court noted the "HGN test is a different type of test from balancing on one leg or walking a straight line because it rests almost entirely upon an assertion of scientific legitimacy rather than a basis of common knowl­edge."  
Blake
, 149 Ariz. at 276, 718 P.2d at 178.  The court con­cluded the 
Frye
 standard applied.  
Blake
, 149 Ariz. at 277, 718 P.2d at 179.  The court then determined that, before the HGN test could be found to satisfy the 
Frye
 rule, it would have to be shown that the HGN test was generally accepted in four different disciplines:  "behavioral psychology, highway safety and, to a lesser extent, neurology and criminalistics."  
Blake
, 149 Ariz. at 278, 718 P.2d at 180.  (Unlike other tests employed in court, such as deoxyribonucleic acid (DNA), it appears that HGN is not used by anyone except police offi­cers.)  Based upon its own re­search as well as arti­cles submit­ted by the prosecu­tion, the Arizona Supreme Court concluded the HGN test satisfied the 
Frye
 standard.  Accord­ingly, the court held that, "with [the] proper foundation as to the techniques used and the officer's ability to use it [citation], testimony of defendant's nystagmus is admissi­ble on the issue of a defendant's blood[-]alcohol level as would be other field[-]sobri­ety test results."  
Blake
, 149 Ariz. at 279, 718 P.2d at 181.

There are several ways a proponent of evi­dence subject to 
Frye
 can prove the "general accep­tance" of the prof­fered evi­dence.  The proponent may use scientific publications, prior judi­cial decisions, practical applications, as well as the testimony of scientists as to the attitudes of their fellow scientists.  See 1 J. Strong, 
McCormick on Evidence §203, at 870 (4th ed. 1992) (and cases cited therein) (hereinafter McCormick).  At least a couple of courts have taken judicial notice of general acceptance where the published indications of general acceptance are unequivocal and undisputed.  McCormick §203, at 870 n.22.  
Blake
 appears to rely upon this method, at least to some extent.  While it may be proper for a trial court to take judicial notice of numerous articles, we believe it is improper for this court to decide the validity or acceptance of a scien­tific test on such a basis.

We agree with 
Buening
 and 
Blake
 in at least one re­spect:  HGN evidence is scientific evidence that must meet the 
Frye
 standard before it is admissible.  This seems to be the majority view.  See 
Schultz
, 106 Md. App. at 158-60, 664 A.2d at 66-67 (and cases cited therein).  In the absence of a 
Frye
 hearing in the instant case, however, we decline to follow the 
Buening
 conclu­sion that HGN evidence is admissible.  The 
Buening
 court relied heavily upon the opinions of other courts, including 
Blake
.  Perhaps the 
Buening
 court relied upon other evidence, but we cannot tell whether it did so from the opinion.

The other cases relied upon in 
Buening
 in turn relied upon 
Blake
.  Four of the cases were from courts that did not deem 
Frye
 applicable to the HGN test.  See 
Howard v. State
, 744 S.W.2d 640 (Tex. Crim. App. 1987); 
State v. Bresson
, 51 Ohio St. 3d 123, 554 N.E.2d 1330 (1990); 
State v. Nagel
, 30 Ohio App. 3d 80, 506 N.E.2d 285 (1986); 
State v. Murphy
, 451 N.W.2d 154 (Iowa 1990).  Of the remaining cases, 
none
 of the appellate courts had the benefit of a 
Frye
 hearing.  Rather, those courts con­cluded that the 
Frye
 standard had been met due to the 
Blake
 court's conclu­sion.  See 
State v. Garrett
, 119 Idaho 878, 881, 811 P.2d 488, 491 (1991) (finding that HGN evidence satis­fies 
Frye
 standard because it had not been provided with authori­ty that "refutes the reasoned decision of [
Blake
]"); 
State v. Armstrong
, 561 So. 2d 883 (La. App. 1990); 
State v. Clark
, 234 Mont. 222, 762 P.2d 853 (1988).

Reliance upon other courts' opinions can be problemat­ic:  "Unless the question of general acceptance has been thor­oughly and thoughtfully litigated in the previous cases, *** reliance on judicial practice is a hollow ritual."  McCormick §203, at 870 n.20.  For example, McCormick cites 
Glover v. State
, 787 S.W.2d 544 (Tex. Crim. App. 1990), as a case where the court held that DNA fingerprinting enjoys general acceptance following a hearing in which defendant produced no expert testimony.  In reaching its decision, the 
Glover
 court relied upon other cases in which no defense experts were available.  McCormick §203, at 870 n.20.  "'[J]udicial notice could become a yellow brick road for judicial acceptance of bogus or at least unvalidated scien­tific theories or techniques.'"  McCormick §203, at 870 n.20, quoting J. Starrs, 
Frye v. United States
 
Re­struc­tured
 
and
 
Revi
­
tal­ized
:  
A
 
Proposal
 
to
 
Amend
 
Federal
 
Evidence
 
Rule
 
702
, 115 F.R.D. 92, 97 (1987).  The State's evi­dence in 
Blake
 con­sist­ed of four wit­nesses:  one research psycholo­gist and three police offi­cers.  The defendant did not present any evi­dence.  The 
Blake
 court relied upon its own research of relevant arti­cles.  While the 
Blake
 defendant "won" the 
Frye
 hearing at the trial court level, that decision was reversed by the appel­late court.  
Blake
 is question­able author­ity for the proposition that the HGN test meets the 
Frye
 standard in Illinois courts.   

The expert retained by the prosecu­tion in 
Blake
, Dr. Burns, was the individual who conducted the study that led to the NHTSA's adoption of the HGN test.  Police depart­ments, in turn, have adopted the NHTSA's recommenda­tions.  In 
Blake
, Dr. Burns sup­ported the proposition that the HGN test is accepted and reli­able, in part, by relying upon the NHTSA's manual and the fact that the test is used by different police depart­ments.  By doing so, however, she in essence referred back to her own conclusions, magnifying the opportu­nity for error.  We do not say that Dr. Burns' conclusions on the subject are flawed, only that the issue has not been fully and thorough­ly litigat­ed.  The proper place for this litigation is in the trial court, and it was error to admit the HGN test evidence without a proper 
Frye
 hearing.

The dissent cites a recent decision, 
Zimmerman v. State
, No. 130 1996 (Del. April 2, 1997) (1997 WL 158121).  In 
Zimmerman
, the Dela­ware Supreme Court re­versed a decision admit­ting HGN evidence because the trial court had not conducted Delaware's equivalent of a 
Frye
 hearing.  That rever­sal is consistent with our holding, that because of the conflict in the decisions the trial court should not simply choose a decision of some other juris­diction to follow, but should actual­ly review the scien­tific testimony on both sides in a 
Frye
 hear­ing.  
Zimmerman
 noted that 
State v. Ruthardt
, 680 A.2d 349 (Del. Super. 1996), decided after the case 
sub
 
judice
, con­duct­ed a 
Frye
 
hear­ing, and 
Zimmerman
 agreed with 
Ruthardt
 but the subse­quent deci­sion did not justify affirmance in the case before it.  
Zimmerman
, slip op. at 3, 4 n.18.  
Ruthardt
 recognized there is some opposi­tion to the HGN test both within the scien­tific community and among the courts, there are several scientific articles published subsequent to the 
Blake
 case that insist that the HGN test has not gained general acceptance within the scien­tific communi­ty, and several articles maintain that the re­search proce­dures in the NHTSA studies are suspect.  
Ruthardt
, 680 A.2d at 359.  The dissent cites 
State v. Taylor
, No. CUM-95-706 (Me. April 18, 1997) (1997 WL 200304), but that decision also relies heavily on the 
Blake
 case and the questioned NHTSA studies.

 The State argues that any error was harmless.  We agree.  While defendant may have had valid objections to both the walk-and-turn and one-leg-stand tests, Woodin did not require defen­dant to take these tests.  Defendant has offered no valid expla­nation for his failure to take the finger-to-nose test.  He simply stated that the test was impossible, even after Woodin demonstrated the test.  Defendant's only explanation for his refusal to submit to the breath test was because he had heard that no one ever passed it.  Defendant's explanation that hay fever and dentures caused his slurred speech were self-serving at best.  Defendant failed the alphabet test.  While we believe the admis­sion of the HGN test was error, we believe it was harmless error in light of the other evidence of defendant's guilt.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

McCULLOUGH, J., concurs.

STEIGMANN, P.J., specially concurs.

PRESIDING JUSTICE STEIGMANN, specially concurring:

Although I concur in the majority's decision to affirm defendant's conviction, I disagree with the majority's conclusion that the trial court erred by admitting the HGN test.

To reach that conclusion, the majority had to reject the fifth district's decision in 
Buening
 that "HGN test results are admissible, as is any other evidence of a defendant's behav­ior, to prove that the defendant is under the influence of alcohol, provided a proper foundation had been laid."  
Buening
, 229 Ill. App. 3d at 546, 592 N.E.2d at 1227-28.  I disagree with the majority's rejection of 
Buening
 because, in my opinion, it is a thoughtful, well-reasoned decision.  Further, although the majority concedes that the third district has also decided to follow 
Buening
 (see 
Wiebler
, 266 Ill. App. 3d at 339, 640 N.E.2d at 27), the majority apparently finds 
Wiebler
 insufficiently persua­sive as well.  

An important reason for the majority's rejection of 
Buening
 (and 
Blake
, which 
Buening
 cited as persuasive) 
appears to be that those courts took judi­cial notice of various published articles in reaching their conclu­sions.  The majority holds as follows:  "While it may be proper for a trial court to take judicial notice of numerous articles, we believe it is improper for this court to decide the validity or acceptance of a scien­tific test on such a basis."  Slip op. at 11.  The majority cites no authority to support this assertion, and I believe none exists.  

"Judicial notice, adjudicative and leg­islative, may also be taken by any court of appellate jurisdiction even if the taking of judicial notice was refused by the trial court or not requested below.  735 ILCS 5/8-1002; 
May Department Stores v. Teamsters Union Local #743
, 64 Ill. 2d 153, 355 N.E.2d 7 (1976); 
In re Ersch's Estate
, 29 Ill. 2d 576, 195 N.E.2d 149 (1964); 
Lubershane v. Village of Glencoe
, 63 Ill. App. 3d 874, 20 Ill. Dec. 681, 380 N.E.2d 890 (1978).  Howev­er, an appellate court will not take judicial notice of evidentiary material not presented below that is critical to a proper determina­tion of the issues between the parties.  
Vulcan Materials Co. v. Bee Constr.
, 96 Ill. 2d 159, 70 Ill. Dec. 465, 449 N.E.2d 812 (1983)."  M. Graham, Cleary & Graham's Hand­book of Illinois Evidence §201.1, at 53 (6th ed. 1994).  

The exception discussed in the last sentence does not apply to resolving the validity of HGN testing under 
Frye
.  

This court should accept the statement of 
Buening
 that trial courts need not conduct future 
Frye
 hearings regarding the admissibility of HGN tests.  On two recent occasions, this court has similarly concluded that 
Frye
 hearings are not necessary regarding scientific subjects--namely, DNA testing in general and certain method­ologies of that testing in particular.  In 
People v. Lipscomb
, 215 Ill. App. 3d 413, 432, 574 N.E.2d 1345, 1357 (1991), this court held that DNA identification procedures are "generally accepted within the particular scientific fields involved" and are admissible.  In 
People v. Pope
, 284 Ill. App. 3d 695, 703, 672 N.E.2d 1321, 1327 (1996), this court held that the polymerase chain reaction based method of DNA typing was "now generally accepted in the relevant scientific communi­ties in­volved, and trial courts need not conduct future 
Frye
 hearings on this issue."  Although it is true that we had more extensive trial court records to review in both 
Lipscomb
 and 
Pope
 than did the fifth district in 
Buening
, I nonetheless am satis­fied that the decision reached in 
Buening
 was correct. 

The majority's decision will have serious consequences.  Prosecutors in the medium-sized counties of this state file hundreds of DUI charges annually, and dozens of those ultimately go to trial.  Because of this volume, and because these cases almost always constitute misdemeanors, precise dates for trial--often necessary to obtain expert witnesses to come to court to testify--are difficult to obtain.  These logistical concerns, coupled with the expense of providing expert testimony for misdemeanor cases, will combine to force prosecutors to forego the use of HGN tests, thus thwarting the truth-seeking purposes of trials.  And all this for reasons that other courts nation­wide have rejected.

One of the most recent courts to address this issue is the Supreme Court of Delaware.  In 
Zimmerman
 (No. 130 1996, slip op. at 3 n.11), that court cited approvingly an earlier decision of the Delaware Superior Court in 
Ruthardt
, to the effect that, "[w]hen establishing a founda­tion for HGN tests, future cases are not required to establish that the HGN test is reason­ably relied upon by ex­perts."  The 
Ruthardt
 court, in con­cluding that experts view HGN evidence as reasonably reliable, explained, in part, as follows:

"The bulk of the scientific research indi­cates that the potential error rate of a properly administered HGN test is lower than all field[-]sobriety tests that are routinely admitted into evidence.  Moreover, most of the studies, scientific articles, state court decisions[,] and other literature on the subject that this Court has reviewed estab­lish that the test is a reliable tool if properly ad­ministered.  In fact, recent cases on HGN evidence reveal that the law has pro­gressed beyond the issue of admissibility towards an emphasis on defining foundation requirements and the qualification[s] of those who administer the test."  
Ruthardt
, 680 A.2d at 360.

In 
Taylor
 (No. CUM-95-706, slip op. at 4), the Supreme Court of Maine also addressed the scientific reliability of HGN tests and wrote the following:

"The scientific studies, law review articles, and other literature on the subject of HGN testing, as well as the case law, demonstrate that the HGN test is reliable if an officer properly administers it.  We are persuaded by these authorities and conclude that the re­sults of the HGN test should be admissible if a proper foundation is laid for their intro­duction in evidence.  A proper foundation shall consist of evidence that the officer or administrator of the HGN test is trained in the procedure and the test was properly ad­ministered."

Like the Supreme Courts of Delaware and Maine, we too should be "progress[ing] beyond the issue of admissibility" (
Ruthardt
, 680 A.2d at 360) and defining foundation requirements.  The majority's decision constitutes a step backward.