IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA17-97

 Filed: 19 December 2017

Brunswick County, No. 15 CRS 50635

STATE OF NORTH CAROLINA

 v.

CHRISTOPHER DAVID BARKER

 Appeal by Defendant from judgment entered 24 August 2016 by Judge Ola M.

Lewis in Superior Court, Brunswick County. Heard in the Court of Appeals 21

August 2017.

 Attorney General Joshua H. Stein, by Assistant Attorney General Kristin J.
 Uicker, for the State.

 Richard J. Costanza for Defendant.

 McGEE, Chief Judge.

 Christopher David Barker (“Defendant”) appeals from judgments entered after

a jury found him guilty of driving while impaired (“DWI”). Defendant argues that

the trial court erred by admitting testimony about the results of a horizontal gaze

nystagmus test (“HGN”) because the testifying officer did not establish the

evidentiary foundation required for expert testimony. We disagree and find no error.

 I. Background

 Defendant was convicted of driving while impaired in Brunswick County

District Court (“the district court”) on 10 December 2015. Upon appeal, Defendant’s
 STATE V. BARKER

 Opinion of the Court

case was then tried before a jury in Brunswick County Superior Court (“the superior

court”) on 22 August 2016. The State’s sole witness at trial was Trooper David Inman

of the North Carolina Highway Patrol (“Trooper Inman”). Trooper Inman testified he

responded to a call on 7 February 2015 regarding a vehicle accident near Leland,

North Carolina. When Trooper Inman arrived at the scene of the accident,

approximately thirty to forty-five minutes after receiving the call, he saw that a single

vehicle had become stuck in a small wooded area after having driven through a T-

shaped intersection. Defendant was at the scene and admitted that he had been

driving the vehicle, but claimed he did not see the stop sign at the intersection

because he was distracted by his cell phone.

 Trooper Inman noted that Defendant seemed unsteady, sleepy, and “thick-

tongued.” He also testified there was a moderate odor of alcohol coming from

Defendant’s breath. Trooper Inman asked Defendant if he had been drinking.

Defendant admitted that he had consumed a twenty-two ounce beer and a few sips of

another. Trooper Inman asked Defendant to blow into an Alco-Sensor, which

Defendant did, and the Alco-Sensor indicated Defendant had, in fact, consumed

alcohol. As a result, Trooper Inman asked Defendant to perform a variety of

standardized field sobriety tests (“SFSTs”). The SFSTs included the walk-and-turn

test (“WAT”), the one-leg-stand test (“OLS”), and the HGN test. After Defendant

completed all the tests, Trooper Inman testified he was of the opinion that

 -2-
 STATE V. BARKER

 Opinion of the Court

Defendant’s mental and physical capacities were impaired by alcohol. He then

arrested Defendant for DWI.

 Trooper Inman described the HGN testing procedures he had used and the

State tendered him as an expert in HGN testing. Trooper Inman testified the HGN

test involves “ask[ing] someone to follow a stimulus with just their eyes,” while the

administering officer looks for nystagmus, which is “a twitching of the eye.” These

eye twitches occur when a person has consumed alcohol, and at different angles

depending on the level of intoxication. Trooper Inman testified that the

administering officer is looking for whether the nystagmus had “onset prior to 45

degrees.” Before beginning the test, the officer must observe the eye while the subject

is looking forward in order to determine whether the subject has a natural, resting

nystagmus. Trooper Inman explained that:

 [I]f whenever you're watching the tip of my finger, if I see
 your eyes shaking, then it's occurring naturally. So there's
 no sense in me taking -- doing the test at all, because if it's
 occurring naturally, I can't tell if there is anything in your
 system that's causing that to happen.

 Trooper Inman testified that a resting nystagmus occurs in “less than 1 percent

of the population” and “can occur when someone has some type of head injury.” He

then testified that Defendant did not have a resting nystagmus, that Defendant’s eyes

were unable to smoothly follow the object, and that his nystagmus had onset prior to

forty-five degrees in both eyes.

 -3-
 STATE V. BARKER

 Opinion of the Court

 Defendant objected to Trooper Inman being qualified as an expert and moved

for a voir dire of the witness. Trooper Inman then testified that, as part of his basic

law enforcement training, he received twenty-four hours of training on standard field

sobriety testing; that he later participated in a sixteen-hour training course called

Advanced Roadside Impaired Driving Enforcement (“ARIDE”); and that he received

two-hour refresher courses on a yearly basis as part of his in-service training. The

ARIDE training course included reading medical studies regarding the SFSTs,

including HGN testing. The trial court overruled Defendant’s objection and Trooper

Inman was permitted to testify as an expert. After Trooper Inman was accepted as

an expert, Defendant did not object to or move to strike any of Trooper Inman’s

testimony regarding the HGN testing.

 Trooper Inman further discussed the method of administering the SFSTs,

including HGN. He testified that Defendant displayed six out of six indicators of

impairment during the HGN test. Trooper Inman testified that, based on the results

of the various SFSTs, it was his opinion that Defendant had “consumed a sufficient

amount of impairing substance so as to appreciably impair his mental and physical

faculties.” During cross-examination, Trooper Inman testified that if someone

displayed four out of six indicators, there was an eighty-eight percent probability that

they would have a blood alcohol concentration of .08 or above. At the conclusion of

all the evidence, the trial court instructed the jury on the appreciable impairment

 -4-
 STATE V. BARKER

 Opinion of the Court

theory under N.C. Gen. Stat. § 20-138.1(a) and the jury found Defendant guilty of

driving while impaired.

 II. Analysis

 Defendant argues that the trial court erred in admitting Trooper Inman’s

testimony regarding the HGN test results. Specifically, Defendant argues that the

trial court failed to comply with its gatekeeping function under Rule 702 of the North

Carolina Rules of Evidence by failing to establish the reliability of the HGN test.

 A. Appellate Jurisdiction

 As a threshold matter, we must address whether Defendant’s appeal is

properly before us. In order for this Court to have jurisdiction to hear this appeal,

the appellant has the responsibility of establishing the jurisdiction of the superior

court in the appellate record. State v. Phillips, 149 N.C. App. 310, 313-314, 560

S.E.2d 852, 855 (2002). Defendant originally filed the record on appeal in this case

on 23 January 2017. The copy of the district court’s judgment provided in the

appellate record did not reflect that Defendant had given an oral notice of appeal. A

party may appeal from a judgment of the district court only by giving oral notice of

appeal at trial or filing a written notice of appeal within fourteen days after entry of

the judgment. N.C. Gen. Stat. § 15A-1431 (2015); N.C. R. App. P. 4(a).

 Appellant subsequently filed a petition for a writ of certiorari on 21 March

2017, which contained a certified copy of the district court’s minutes taken during the

trial, a certified copy of the back of the district court file containing a notation

 -5-
 STATE V. BARKER

 Opinion of the Court

acknowledging Defendant’s notice of appeal, as well as an affidavit from Defendant’s

trial attorney. These documents tended to show that Defendant gave oral notice of

appeal in the district court following the entry of the judgment and that the absence

of the notation on the district court’s judgment was a clerical error. This Court has

discretion to allow the amendment of the appellate record under N.C. R. App. 9(b)(5).

We believe that the documents provided are sufficient to show that Defendant gave

oral notice of appeal to the superior court under N.C. R. App. 9(a)(3)(h). We therefore

allow Defendant’s writ of certiorari to review the merits of the appeal.

 B. Standard of Review

 A trial court’s ruling regarding the admissibility of expert testimony “will not

be reversed on appeal absent a showing of abuse of discretion.” State v. McGrady,

368 N.C. 880, 893, 787 S.E.2d 1, 11 (2016) (citing Howerton v. Arai Helmet, Ltd., 358

N.C. 440, 458, 597 S.E. 2d 674, 686 (2004)). A trial court may only be reversed for

abuse of discretion “upon a showing that its ruling was manifestly unsupported by

reason and could not have been the result of a reasoned decision.” Id. (citing State v.

Riddick, 315 N.C. 749, 756, 340 S.E.2d 55, 59 (1986)).

 C. Rule 702 Requirements

 Our Supreme Court clarified the effects of the 2011 amendments to N.C. Gen.

Stat. § 8C-1, Rule 702 (2011) in McGrady. 368 N.C. 880, 787 S.E.2d 1. The Court

noted the General Assembly amended Rule 702(a) to mirror the language of the

federal rule of evidence to read:

 -6-
 STATE V. BARKER

 Opinion of the Court

 (a) If scientific, technical or other specialized knowledge
 will assist the trier of fact to understand the evidence or to
 determine a fact in issue, a witness qualified as an expert
 by knowledge, skill, experience, training, or education, may
 testify thereto in the form of an opinion, or otherwise, if all
 of the following apply:
 (1) The testimony is based upon sufficient facts or
 data.
 (2) The testimony is the product of reliable principles
 and methods.
 (3) The witness has applied the principles and
 methods reliably to the facts of the case.
 (a1) A witness, qualified under subsection (a) of this section
 and with proper foundation, may give expert testimony
 solely on the issue of impairment and not on the issue of
 specific alcohol concentration level relating to the
 following:
 (1) The results of a Horizontal Gaze Nystagmus
 (HGN) Test when the test is administered by a
 person who has successfully completed training in
 HGN.

N.C.G.S. § 8C-1, Rule 702.

 McGrady stated that the amended language signaled the General Assembly’s

intent to incorporate the federal standards for the admission of expert witness

testimony. McGrady, 368 N.C. at 888, 787 S.E.2d at 8. The federal standard for the

admission of expert witness testimony has been articulated in a line of cases

beginning with Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 125 L.

Ed. 2d 469 (1993). Our Supreme Court confirmed in McGrady that North Carolina

is now a Daubert state; however, the Court was careful to note that “[o]ur previous

 -7-
 STATE V. BARKER

 Opinion of the Court

cases are still good law if they do not conflict with the Daubert standard.” McGrady,

368 N.C. at 888, 787 S.E.2d at 8.

 Under Daubert, a trial court is required to make an inquiry into the reliability

of the expert testimony. Daubert, 509 U.S. at 590, 125 L. Ed. 2d at 469. The primary

focus of the inquiry is on “the reliability of the witness’s principles and methodology,

not on the conclusions that they generate.” McGrady, 368 N.C. at 890, 787 S.E.2d at

9. The Court in McGrady set out the five Daubert factors including:

 (1) whether a theory or technique . . . can be (and has been)
 tested; (2) whether the theory or technique has been
 subjected to peer review and publication; (3) the theory or
 technique's “known or potential rate of error;” (4) the
 existence and maintenance of standards controlling the
 technique's operation; and (5) whether the theory or
 technique has achieved “general acceptance” in its field.

McGrady, 368 N.C. at 890–91, 787 S.E.2d at 9 (citing Daubert, 509 U.S. at 593–94,

125 L. Ed. 2d at 469) (internal citations omitted). Decisions by North Carolina courts

following Daubert have added additional reliability factors, including consideration

of “the expert's use of established techniques, the expert's professional background in

the field, the use of visual aids before the jury so that the jury is not asked ‘to sacrifice

its independence by accepting [the] scientific hypotheses on faith,’ and independent

research conducted by the expert.” Howerton, 358 N.C. at 460, 597 S.E.2d at 687

(citing State v. Pennington, 327 N.C. 89, 98, 393 S.E.2d 847, 852 (1990)). The inquiry

is flexible, and “Daubert’s list of specific factors neither necessarily nor exclusively

 -8-
 STATE V. BARKER

 Opinion of the Court

applies to all experts or in every case.” Kumho Tire Co., Ltd. v. Carmichael, 526 U.S.

137, 141, 143 L. Ed. 2d 143, 143 (1999).

 Defendant argues that Trooper Inman failed to provide the trial court with the

necessary foundation to establish the reliability of the HGN test. Under McGrady

and subsequent cases, such a finding is simply unnecessary. Recently, in State v.

Godwin, our Supreme Court stated that “with the 2006 amendment to Rule 702, our

General Assembly clearly signaled that the results of the HGN test are sufficiently

reliable to be admitted into the courts of this State.” Godwin, ____ N.C. ____, ____,

800 S.E.2d 47, 53 (2017). See also State v. Younts, ____ N.C. App. ____, ____, 803

S.E.2d 641 (2017). Additionally, where such a reliability inquiry is required, the test

is much less rigid than Defendant would ask this Court to require. In McGrady, our

Supreme Court was clear that “[the factors articulated in Daubert] are part of a

‘flexible’ inquiry, so they do not form ‘a definitive checklist or test[.]’” McGrady, 368

N.C. at 890-891, 787 S.E.2d at 9-10. The trial court may consider other factors that

assist the court in assessing reliability given “the nature of the issue, the expert's

particular expertise, and the subject of his testimony.” Id. (citing Kumho, 526 U.S.

at 150, 143 L. Ed. 2d at 238) (internal citations omitted). Because Rule 702

established that HGN tests are sufficiently reliable to be admitted in our courts, the

trial court in the present case did not abuse its discretion in admitting the results of

the HGN test.

 -9-
 STATE V. BARKER

 Opinion of the Court

 Defendant relies heavily on the decision in State v. Helms, 348 N.C. 578, 504

S.E.2d 293 (1998), which, critically, was decided prior to the General Assembly’s

amendments to Rule 702 in 2006 and 2011, as well as the decision in McGrady. In

Helms, our Supreme Court decided that “the HGN test does not measure behavior a

lay person would commonly associate with intoxication but rather represents

specialized knowledge that must be presented to the jury by a qualified expert.”

Helms at 581, 504 S.E.2d at 295. However, our Supreme Court found in Godwin that

reading subsections (a) and (a1) of Rule 702 together, “it is evident that the General

Assembly envisioned the precise scenario we address today and made clear provision

to allow testimony from an individual ‘who has successfully completed training in

HGN’ and meets the criteria set forth in Rule 702(a).” Godwin, ____ N.C. App. at

____, 800 S.E.2d at 50. See also State v. Shore, ____ N.C. App. ____, ____, 804 S.E. 2d

606 (2017) (“experience alone or experience combined with knowledge and training is

sufficient to establish a proper foundation for reliable expert testimony[.]”). The trial

court in Godwin never determined that the officer was an expert witness in HGN

testing, yet our Supreme Court held “when the record contains sufficient evidence

upon which the trial court could have based an explicit finding that the witness was

an expert, an appellate court may conclude that the trial court found the witness to

be an expert.” Godwin, ____ N.C. App. at ____, 800 S.E.2d at 48, 50-51 (“such explicit

 - 10 -
 STATE V. BARKER

 Opinion of the Court

recognition is not required[.]”). In the present case, the court determined that

Trooper Inman was an expert in HGN testing.

 McGrady clearly states that the inquiry still involves a “three-step framework-

namely, evaluating qualifications, relevance, and reliability” and “expert testimony

must satisfy each to be admissible.” McGrady, 368 N.C. at 889-892, 787 S.E.2d at 8-

10. The trial court’s important role includes examining the qualifications of a witness

tendered as an expert, the basis for the witness’s opinions, and the extent of the

witness’s testimony. See, e.g. State v. Holloman, 2017 WL 4365111 (2017)

(determining that because the highway patrolman did not specifically mention any

training in HGN testing, there was insufficient evidence on the record to support

finding that a highway patrolman was an expert in HGN testing, despite the findings

in Godwin). The depth of the inquiry is limited only in the context of HGN testing,

where the General Assembly has clearly signaled that the requirements be applied

leniently. In the present case, there was sufficient evidence to support the trial

court’s determination that Trooper Inman was qualified to testify as an expert as to

the reliability of the HGN test.

 III. Conclusion

 We find no error in Defendant’s trial for driving while impaired.

 NO ERROR.

 Judge BERGER concurs.

 - 11 -
 STATE V. BARKER

 Opinion of the Court

Judge DIETZ concurs with separate opinion.

 -2-
 No. COA17-97 – State v. Barker

 DIETZ, Judge, concurring.

 I concur in the majority’s judgment in this case. Barker argues that the State

failed to establish the reliability of HGN testing at trial, as required by Rule 702(a)

and McGrady. While this appeal was pending, our Supreme Court decided State v.

Godwin and held that, through Rule 702(a1), “our General Assembly clearly signaled

that the results of the HGN test are sufficiently reliable to be admitted into the courts

of this State.” __ N.C. __, __, 800 S.E.2d 47, 53 (2017). In other words, Godwin held

that the legislature has deemed HGN testing to be reliable as a matter of law, and

therefore trial courts need not assess that reliability factor before admitting expert

testimony on the issue.

 I acknowledge, as Barker observes in his brief, that courts in other jurisdictions

have questioned the reliability of HGN testing under standards similar to our Rule

702(a). But it is axiomatic that this Court must follow precedent from our Supreme

Court. Thus, we have no choice but to reject Barker’s argument. If Barker seeks to

challenge the Godwin holding, he must do so in the Supreme Court.